**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KAASA-MIDLANTIC, LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>RELIANT LAND SERVICES, LLC,<br>MIDLANTIC TITLE, LLC, FRANK<br>SEMIRAGLIO, MARK BERENATO,<br>KELLY BURMYLO, and JOHN/JANE DOE<br>1-5,<br><br>　　　　Defendants. | (Electronically Filed)<br><br>Civil Case No.:<br><br>**COMPLAINT** |

Plaintiff, KAASA-Midlantic, LLC ("Plaintiff" or "KML"), by way of Complaint against Defendants, Reliant Land Services, LLC ("Reliant"), Midlantic Title, LLC ("MT"), Frank Semiraglio ("Semiraglio"), Mark Berenato ("Berenato"), and Kelly Burmylo ("Burmylo"), says:

**PRELIMINARY STATEMENT**

1.　　KML brings this action to rectify serious breaches of Semiraglio, Berenato, and Burmylo's contractual and fiduciary duties to KML committed during their employment and after they departed to form a competing entity, Reliant. Their numerous infractions include, among others, self-dealing and expense-fraud, conversion of KML property, breaches of restrictive covenants, and theft of KML's trade secrets and confidential information. These and other actions also constitute material breaches of an asset purchase agreement between KML and MT, to which Semiraglio and Berenato are also signatures, and which Semiraglio and Berenato fraudulently induced KML to enter into. KML seeks damages suffered as a result of the Defendants' actions, recission of the asset purchase agreement, and injunctive relief to prevent further harm.

## JURISDICTION, AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C.A. § 1836(c).

3.      This Court has personal jurisdiction over Reliant, MT, Semiraglio, Berenato, and Burmylo (the "Defendants") because the actions committed that give rise to this Complaint were in whole or in part committed in New Jersey and the resulting injuries have affected and will continue to affect KML in New Jersey. In addition, the Defendants are all New Jersey entities or individual residents.

4.      Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within the District of New Jersey.

5.      Alternatively, venue is appropriate pursuant to the parties' contracts, at issue in this matter and described in further detail below, which call for all actions arising out of or related to those agreements to be brought in the Federal or State Courts located in the City of Camden, New Jersey.

## THE PARTIES

6. KML is a New Jersey LLC with a principal place of business located at 106J Centre Boulevard, Marlton, NJ 08053.

7.      Upon information and belief, Reliant is a New Jersey LLC with a principal place of business in New Jersey.

8.      Upon information and belief, MT is a New Jersey LLC with a principal place of business in New Jersey.

2

9.     Semiraglio is an individual and a former employee of KML.  Semiraglio was also a principal of MT, and, upon information and belief, an employee, member, manager, and/or owner of Reliant.  Upon information and belief, Semiraglio is a resident of the state of New Jersey.

10.     Berenato is an individual and a former employee of KML.  Berenato was also a principal of MT, and, upon information and belief, an employee, member, manager, and/or owner of Reliant.  Upon information and belief, Berenato is a resident of the state of New Jersey.

11.     Burmylo is an individual and former employee of KML.  Upon information and belief, she is also an employee, member, manager, and/or owner of Reliant. Upon information and belief, Burmylo is a resident of the state of New Jersey.

12.     John/Jane Does 1-5 are fictitious individuals who, upon information and belief, are or were employed by KML, and are now or will be employees, members, managers, and/or owners of Reliant, and/or individuals who otherwise assisted Semiraglio, Berenato, and/or Burmylo in their concerted effort to steal KML's trade secrets and confidential information and form a competing business in breach of their fiduciary and contractual duties to KML.

## FACTS RELEVANT TO ALL COUNTS

### The Asset Purchase Agreement

13.     By an agreement dated January 15, 2015, KML purchased the assets and certain liabilities of MT (the "Asset Purchase Agreement" or "APA").  Semiraglio and Berenato (referred to in the agreement as the "Principals") signed the Asset Purchase Agreement as principals of MT.

14.     Section 1.01 of the Asset Purchase Agreement stated that MT agreed to sell "all of [MT's] and each Principal's right, title and interest in, to and arising under all of the assets. . .

properties and rights of every kind or nature owned. . . or otherwise held [or] used by Seller or to the extent related to the Business, the Principals as of the Closing Date. . . ."

15.    Article III of the Asset Purchase Agreement stated that MT "and the Principals, jointly and severally, represent and warrant to [KML] that" certain representations and warranties were "true and correct as of the date hereof," *i.e.* January 15, 2015. Among these, MT and the Principals warranted that:

a)  MT "has no liabilities, obligations or commitments of any nature whatsoever. . . except (a) those which are adequately reflected or reserved against in the Seller Interim Balance Sheet, and (b) those which have been incurred in the ordinary course of business. . ." See APA § 3.04.

b)  MT "has timely paid. . . all [t]axes. . . ." See APA § 3.06.

c)  MT "owns and has good title to the Purchased Assets, free and clear of Encumbrances. . . ." See APA § 3.07.

d)  "There is no claim, action, suit, proceeding or governmental investigation ("Action") of any nature pending or, to [MT's] knowledge, threatened against or by [MT]." See APA § 3.13.

e)  "No representation or warranty by [MT] or the Principals in this agreement and no statement contained in the Disclosure Schedules. . . or any certification or other document furnished. . . to [KML]. . . contains any untrue statement of material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading." See APA § 3.16.

**Semiraglio and Berenato's employment agreements**

16.    Contemporaneously with entry into the Asset Purchase Agreement, Semiraglio and Beranato, formerly owners and principals of MT, became employees of KML.

17.    Semiraglio entered an employment agreement with KML, dated January 15, 2015, whereby he became the Chief Executive Officer of KML (the "Semiraglio Employment Agreement"). Semiraglio was to be paid "a salary at the annual rate of $125,000.00," with potential bonuses. See Semiraglio Employment Agreement, § 3.1.

18.     Berenato entered an employment agreement with KML, dated January 15, 2015, whereby he became the Chief Operating Officer of KML (the "Berenato Employment Agreement"). Berenato was to be paid "a salary at the annual rate of $75,000.00," with potential bonuses. Scc Berenato Employment Agreement, § 3.1

19.     The Semiraglio Employment Agreement and the Berenato Employment Agreement (the "Employment Agreements") contain substantially similar terms.

20.     The Employment Agreements require, among other provisions, that Semiraglio and Berenato:

   a) "shall devote his full working time, energy, skill, and best efforts to the performance of his duties... In a manner that will faithfully and diligently further the business and interests of [KML]." See Employment Agreements, § 1.2(b).

   b) "shall not, either during Employee's employment. . . or after the termination of Employee's employment with [KML] for any reason (whether voluntary or involuntary). . . Disclose or divulge. . . any Confidential Information. . . or. . . copy, reproduce or remove from the [KML] any Confidential Information." See Employment Agreements, § 5.1.[1]

   c) "During the Restricted Period[2]. . . not, directly or indirectly. . . solicit business from a customer or prospective customer of [KML], or do business with any customer or prospective customer of [KML], to the extent competitive with [KML]." See Employment Agreements, § 5.3.

   d) "During Employee's employment with [KML] and during the Restricted Period. . . not. . . directly or indirectly (i) engage in or assist others in engaging in" competition with KML, or "have an interest in any third-party that engages directly or indirectly in" competition with KML. See Employment Agreements, § 5.4.

---

[1] "Confidential Information" is defined as "any trade secrets or confidential or proprietary information of the company, including information concerning customers, products, processes, pricing policies, computer records or software, algorithms, technical data, customer lists or any information relating to the company's business." See Employment Agreements, § 5.1.
[2] The "Restricted Period" is defined as "one year after termination of Employee's employment, except that if Employee's employment is terminated by the Company without Cause or by the Employee for Good Reason. . . 90 days," which exception does not apply in this case.

5

21.     The Employment Agreements contain consent to jurisdiction of this Court, see § 6.8, and attorney fee shifting provisions, see § 6.10.

**MT's Breaches of the Asset Purchase Agreement**

22.     Although MT, Semiraglio and Berenato made representations as to the existing liabilities in the Asset Purchase Agreement, see APA § 3.04, they failed to disclose a pending litigation with a former employee named Lisa Kelly. That litigation did not settle until on or about April or May, 2015, well after the closing date of the Asset Purchase Agreement.

23.     MT, Semiraglio and Berenato also failed to disclose significant mishandling of their trust accounts, which has, and could continue to, expose KML to considerable potential liability associated with this mismanagement.  In particular, KML discovered, after the departure of Semiraglio and Berenato, a class action lawsuit against MT relating to MT's failure to pay owed excess recording fees.

24.     Moreover, although KML agreed to assume only certain of MT's liabilities, see APA § 1.02, Semiraglio and Berenato (as officers of KML) improperly paid invoices and other liabilities of MT with KML monies, in breach of both the Asset Purchase Agreement and their duties to KML.

25.     For example, KML paid fees associated with MT bank service charges for which it should not have been liable.

26.     Moreover, MT ultimately transitioned to KML on or about November 1, 2015 (the "Transition Date"), at which point MT and the Principals agreed that "[MT] shall change its name from 'MidLantic Title, LLC' to any other name for so long as such name does not include the word 'Midlantic,' or similar variation." See Asset Purchase Agreement, § 5.08.

27.     Nonetheless, after that date, MT and its Principals continue to use credit cards under the name "Midlantic Title," and continue to utilize multiple bank accounts under the name "Midlantic Title."

28.     Similarly, MT never ceased operating its trust or operating accounts, as required by the APA and accompanying agreements.   Although Semiraglio instructed Berenato to complete this task as early as January, 2015, it was *never* completed (and certainly not completed by the Transition Date).   Worse, when questioned by KML ownership, Berenato falsely claimed to know nothing about this requirement or any efforts to comply with it.

**Semiraglio and Berenato's post-closing employment**

29.     After becoming employees of KML, Semiraglio and Berenato engaged in concerted and systematic efforts to convert KML monies to their own benefit, mismanage KML to the detriment of its owner, and ultimately undermine KML's business.

30.     During their entire period of employment at KML, Semiraglio and Berenato showed themselves to be unwilling, unable or uninterested in fulfilling their end of the Asset Purchase Agreement of the Employment Agreements.   Instead they conducted themselves unprofessionally (and sometimes childishly), repeatedly refusing to follow the direction of KML ownership, and in all instances acting contrary to the best interests of KML.

31.     For example, during meetings with ownership, Semiraglio would walk out of the meeting after shouting that he "is the CEO" and he "will make all the decisions" no matter what. Semiraglio's antics were witnessed by multiple other employees

32. Semiraglio's claim to be entitled to "make all the decisions" is contrary to the plain wording of the APA, which states that ownership of KML retained "sole discretion with all

matters relating to the operating of the business," notwithstanding Semiraglio's repeated and cantankerous insistence to the contrary.

33.    For example, Semiraglio and Berenato served as KML's CEO and COO, respectively, during a series of unsatisfactory audits:

a) on or about July 16, 2015, Westcor performed an audit, for which no notice was given to ownership of KML. The audit's results were unsatisfactory, and yet the issues discovered were never corrected.

b) Similarly, on or about February 2, 2015, First American performed an audit, for which no notice was given to ownership. The audit's results were unsatisfactory, and yet the issues discovered were never corrected.

c) Similarly, on or about September 15, 2016, Fidelity National performed an audit, for which no notice was given to ownership. The audit's results were unsatisfactory, and yet the issues discovered were never corrected.

d) Similarly, on or about April 11, 2016, First American again performed an additional audit, for which no notice was given to ownership. The audit's results were unsatisfactory, and yet issues discovered were never corrected.

34.    It has since come to KML's attention that Berenato was completely unresponsive during each of these audits, sometimes for months, and refused to provide the information requested. KML ownership only became aware of the second audit by First American one First American itself alerted KML ownership to Berenato's unresponsiveness.

35.    Semiraglio and Berenato also caused KML to pay them compensation in a manner inconsistent with their Employment Agreements.  Specifically, although each were to receive salaries under the Employment Agreements, they paid themselves from January through October, 2015 certain "guaranteed payments" instead.

36.    Semiraglio and Berenato also paid various personal expenses using KML money. For example, they were causing KML to pay their family cell phone bills, as well as their personal auto insurance premiums (including premiums related only to their spouses).

37. Semiraglio and Berenato also submitted false invoices for reimbursement for the purpose of embezzling KML monies or funneling those monies to their friends and family.

38. For example, Semiraglio submitted invoices for marketing expenses that turned out not to be marketing expenses for KML, but instead were expenses of Nancy Kowalik Real Estate, Park Place Realty, and others.

39. In particular, it turned out Semiraglio and Berenato had offered to, and actually did, pay for furniture for Koawlik's office. Semiraglio and Berenato had also offered to, and actually did, pay rent for Kowalik and Park Place—though these payments were falsely listed as "Advertising and Promotion" on the associated expense reimbursement forms in order to camouflage the impropriety of these payments.

40. Payments of this nature occurred on multiple occasions, and are not a legitimate marketing expense for KML. In fact, payments of this nature violate RESPA and realtor codes of ethics, and expose KML to potential liability as a result of Semiraglio and Berenato's inappropriate conduct.

41. Semiraglio also submitted for reimbursement of various EZ pass expenses for personal use without permission. Although Semiraglio represented these expenses were business related, his calendar for entire months where such reimbursement was sought did not reflect appointments that would have required him to pay tolls.

**Semiraglio and Berenato's departure from KML**

42. Berenato was terminated for cause on April 12, 2017.

43. Semiraglio resigned without good reason a few hours after Berenato's termination.

9

44. The same day, Berenato attempted to cover-up his termination by submitting a letter to KML claiming he had resigned for "good reason" under his Employment Agreements.

45. Semiraglio submitted a strikingly similar letter attempting to justify his resignation under the "good reason" standard in his own Employment Agreement, even though he did not have such "good reason" to resign.

46. These letters were false and constituted a bad-faith attempts to, among other things, decrease the length of the restrictive covenants contained in the Employment Agreements. These bad-faith claims evidence an intent to immediately begin improperly competing with KML.

47. Upon their departure, Semiraglio and Berenato removed a significant amount of business documentation from KML's offices. They have since refused to return that documentation which, upon information and belief, contain significant trade secrets, confidential and proprietary information, including but not limited to confidential customer information which could be (and upon information and belief is being) used to improperly compete with KML.

48. After their departure, Semiraglio and Berenato retained control of, and in some instances changed the address associated with, various bank accounts, hindering KML's ability to operate its business. These accounts were originally MT trust and operating accounts, all of which should have been closed and transitioned into KML accounts on or before the Transition Date of November 1, 2015.

49. Upon and after their departure, Semiraglio and Berenato also refused to return KML property taken with them when they departed from KML, including but not limited to

laptops and other electronic devices, and our work and other fixtures removed from KML's 106 Centre Boulevard Premises.

50.     Upon the termination of Semiraglio's employment, he failed to return his office keys, desk keys, business cards, and computers. Worse, Semiraglio instructed Lori Peters (a family member and former KML employee), as well as Burmylo, to enter KML's offices and remove KML property without permission.

51.     KML purchased "all inventory, furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones and other tangible personal property" of both MT and the Principals (including Semiraglio) pursuant to the Asset Purchase Agreement, see APA § 1.01, and, therefore, removal of any property from KML's premises was improper and unwarranted.

### Semiraglio, Berenato, and Burmylo's competition with KML through Reliant

52.     Shortly after Semiraglio and Berenato's departure, the reason for their looting of KML's property and files, as well as their reason for claiming to have left for "good cause" under the Employment Agreements, became clear.

53.     Soon after their termination, a company directly competing with KML called Reliant Land Services, LLC opened for business. Upon information and belief, Semiraglio and Berenato are the owners and managing members of Reliant.

54.     Soon after Semiraglio and Berenato's termination, Burmylo (a processor at KML) also resigned suddenly in the first week of August, 2017. The week immediately following her resignation, Burmylo was already listed as the third employee (along with Semiraglio and Berenato) of Reliant on Reliant's automated phone system.

11

55. Burmylo deleted thousands of emails shortly before her resignation from KML, and attempted to wipe them clean from KML's computer systems. Upon information and belief, this action has only one explanation—Burmylo was (a) covering up her inappropriate theft of KML trade secrets and confidential, proprietary information, including but not limited to customer information, and (b) covering up activities she took on behalf of Reliant, Semiraglio and Berenato while still employed by KML.

56. Within days of Burmylo's departure, KML's fears that Semiraglio, Berenato and Burmylo had colluded to utilize KML's trade secrets and confidential information to improperly induce KML's customers to do business with Reliant were confirmed. Reliant is co-sponsoring an event with several of KML's former customers who, upon information and belief, have suddenly become Reliant's business partners.

57. Upon information and belief, this event, discovered by chance, is the proverbial "tip of the iceberg," and while investigation remains ongoing, it is already apparent that Semiraglio, Berenato, and Burmylo have improperly removed trade secrets from KML, including but not limited to its confidential customer information, and improperly used that information to benefit their new company, Reliant, in breach of their fiduciary duties to KML and, in the case of Semiraglio and Berenato, their Employment Agreements.

## FIRST COUNT
(Breach of Employment Agreements' Restrictive Covenants)
(as against Semiraglio and Berenato)

58. KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

59. Semiraglio's and Berenato's respective employment agreements contain restrictive covenants prohibiting Semiraglio and Berenato from directly or indirectly soliciting

12

business from KML's customers or prospective customers, or from doing business with any of KML's customers or prospective customers, for a period of one year following their termination for cause or departure without good reason.

60. Semiraglio's and Berenato's respective employment agreements contain restrictive covenants prohibiting Semiraglio and Berenato from engaging in, or assisting others in engaging in, competition with KML, or having any interest in any third-party that engaged directly or indirectly in competition with KML, for a period of one year following their termination for cause or departure without good reason.

61. KML provided Semiraglio and Berenato valuable consideration when agreeing to their respective employment agreements.

62. Semiraglio's employment with KML ended without good reason, and Berenato was terminated for cause.

63. Semiraglio and Berenato thereafter breached the above-referenced restrictive covenants by forming and/or accepting employment with Reliant, and/or by soliciting KML's customers and prospective customers, and/or by competing, directly or indirectly, with KML.

64. As a result of these breaches, KML has not received the benefit of its bargain with Semiraglio or Berenato.

65. As a direct and proximate result of these breaches, KML has been damaged through lost business and continues to be irreparably harmed in its business and property.

WHEREFORE, KML prays for judgment against Semiraglio and Berenato granting a permanent injunction enforcing the terms of the restrictive covenants contained in Semiraglio and Berenato's respective employment agreements, awarding compensatory damages,

13

disgorgement of profits, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## SECOND COUNT
(Breach of Employment Agreements' Nondisclosure Obligations)
(as against Semiraglio and Berenato)

66.   KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

67.   Under the Employment Agreements, Semiraglio and Berenato were obligated not to use or disclose KML's trade secrets and confidential, proprietary information.

68.   Among other information, KML considers and treats its customer information and business strategy as confidential, proprietary and/or trade secrets.

69.   Semiraglio and Berenato breached the Employment Agreements' confidentiality obligations by forming and/or accepting employment with Reliant, because, upon information and belief, they have used and/or disclosed (and will inevitably continue to use and/or disclose) KML's trade secrets and confidential proprietary information, including but not limited to their knowledge of KML's customers and KML's strategic plans.

70.   As a result of the foregoing, Semiraglio and Berenato have breached their Employment Agreements.

71.   As a direct and proximate results of these breaches, KML has been damaged through lost business and continues to be irreparably harmed in its business and property.

WHEREFORE, KML for judgment against Semiraglio and Berenato granting a permanent injunction enforcing the terms of the confidentiality and nondisclosure obligations contained in Semiraglio and Berenato's respective employment agreements, awarding compensatory damages, disgorgement of profits, punitive damages, fees, and costs of suit,

14

including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## THIRD COUNT
(Breach of the Implied Covenant of Good Faith and Fair Dealing)
(as against Semiraglio and Berenato)

72. KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

73. In every contract, there exists an implied covenant of good faith and fair dealing.

74. Semiraglio and Berenato are bound by the covenant of good faith and fair dealing implied by law in the Employment Agreements.

75. By virtue of his aforementioned conduct, Semiraglio and Berenato have threatened to breach, have breached, and continue to breach the covenant of good faith and fair dealing implied in the Employment Agreements.

76. As a direct and proximate result of these breaches, KML has been damaged and continues to be irreparably harmed in its business and property.

WHEREFORE, KML for judgment against Semiraglio and Berenato awarding compensatory damages, disgorgement of profits, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## FOURTH COUNT
(Breach of Duty of Loyalty/Fiduciary Duty)
(as against Semiraglio, Berenato, and Burmylo)

77. KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

78.     As employees, Semiraglio, Berenato, and Burmylo owed a duty to KML to act with the highest good faith and fidelity and to act fairly and without self-dealing.

79.     Semiraglio, Berenato, and Burmylo have breached and/or will inevitably continue to breach their duties of loyalty by, among other things, wrongfully competing with KML and otherwise acting adversely to KML's interests.

80.     Upon information and belief, Semiraglio, Berenato, and Burmylo took steps to begin soliciting KML's customers, and begin competing with KML, while still employed by KML.

81.     In addition to the foregoing, Semiraglio and Berenato engaged in extensive self-dealing while employed by KML.

82.     Semiraglio, Berenato, and Burmylo's actions are and will continue to be contrary to KML's interest, in direct violation of the duty of loyalty owed by each to KML.

83. As a direct and proximate result of these breaches, KML has been damaged and continues to be irreparably harmed in its business and property.

WHEREFORE, KML prays for judgment against Semiraglio, Berenato, and Burmylo awarding compensatory damages, disgorgement of all salary, bonus and other compensation during the entire period of disloyalty, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## FIFTH COUNT
(Misappropriation and Wrongful Use and Disclosure of KML's Confidential and
Proprietary Information and/or Trade Secrets under NJTJTSA)
(as against Semiraglio, Berenato, Burmylo, and Reliant)

84.     KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

16

85.    KML imparted to Semiraglio, Berenato, and Burmylo its trade secrets and/or confidential and proprietary information with the understanding that Semiraglio, Berenato, and Burmylo would not disclose or use that information other than for the benefit of KML.

86.    KML's trade secrets and/or confidential information constitute proprietary information that is protected from disclosure under the laws of New Jersey.  Specifically, KML's confidential information constitute trade secrets within the meaning of the New Jersey Uniform Trade Secrets Act, N.J.S.A. 56:15-1 *et seq.* (the "NJTJTSA").

87.    KML owns valuable and secret information, including, but not limited to, the information described above, that derives independent economic value, actual or potential, from not being generally known, and not being readily ascertainable by proper means, by others that gives KML actual and potential economic advantage over others.

88.    Semiraglio and Berenato are obligated not to use or disclose KML's trade secrets and confidential and proprietary information under the terms of their Employment Agreements

89.    Semiraglio, Berenato, and Burmylo are obligated not to use or disclose KML's trade secrets and confidential and proprietary information pursuant to New Jersey common and statutory law.

90.    Upon information and belief, Semiraglio, Berenato, and Burmylo acquired, and/or have wrongfully used and/or disclosed KML's confidential and proprietary information and/or trade secrets to Reliant, a competitor of KML, for Reliant's benefit to the detriment of KML.

91.    Upon information and belief, Reliant acquired information belonging to KML, including, information known to be, or information that they should have known constituted, KML's confidential and proprietary information and/or trade secrets.

17

92. Reliant used improper means to obtain KML's confidential and proprietary information and/or trade secrets in violation of the NJUTSA.

93. Alternatively, at the time of the disclosure of the information to Reliant, upon information and belief, Reliant knew or should have known that the knowledge of the information was derived or acquired through improper means.

94. Alternatively, Reliant knew or should have known that the knowledge of the information was derived through a person who owed a duty to KML to maintain the secrecy of the information or limit the use of the information.

95. By virtue of the aforementioned conduct, Semiraglio, Berenato, Burmylo, and Reliant have wrongfully misappropriated KML's confidential and proprietary information and/or trade secrets.

96. As a direct and proximate cause of defendants' wrongful misappropriation, KML has been damaged and continues to be injured in its business and property.

97. KML seeks an injunction against defendants based upon the actual and threatened misappropriation pursuant to N.J. S .A. 56:15-3a.

98. Pursuant to N.J.S.A. 56:15-3c, KML seeks the return and destruction of all copies of its confidential information and other affirmative acts necessary to protect and preserve its valuable rights and to protect the privacy of its customers.

99. As a result of the Semiraglio, Berenato, Burmylo, and Reliant's willful and malicious conduct, KML is entitled to recover statutory damages, including, but not limited to, punitive damages to the extent permitted by to N.J.S.A. 56:15-4b.

WHEREFORE, KML prays for judgment against Semiraglio, Berenato, Burmylo, and Reliant awarding compensatory damages, punitive damages, fees, and costs of suit, including

18

reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## SIXTH COUNT
(Misappropriation and Wrongful Use and Disclosure of KML's Confidential and Proprietary Information and/or Trade Secrets under Federal DTSA)
(as against Semiraglio, Berenato, Burmylo, and Reliant)

100.    KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

101.    KML owns valuable and secret information, including, but not limited to information concerning customers, products, processes, pricing policies, computer records or software, algorithms, technical data, customer lists or any information relating to the company's business.

102.    KML derives independent economic value from this information not being generally known, and not being readily ascertainable by proper means, by others that gives KML actual and potential economic advantage over others.

103.    KML uses the above-described information to provide products and services in interstate commerce.

104.    KML takes reasonable steps to prevent the disclosure of the trade secrets and confidential and proprietary information described above, including but not limited to storing it on password-protected computer systems and limiting access to the information to its own employees.

105.    KML's trade secrets and/or confidential information constitute proprietary information that is protected from disclosure under the Federal Defend Trade Secrets Act,  18 U.S.C. § 1836 *et seq.* (the "DTSA").

106. Semiraglio and Berenato are obligated not to use or disclose KML's trade secrets and confidential and proprietary information under the terms of their Employment Agreements.

107. Semiraglio, Berenato, and Burmylo are obligated not to use or disclose KML's trade secrets and confidential and proprietary information pursuant to common and statutory law.

108. Upon information and belief, Semiraglio, Berenato, and Burmylo acquired, and/or have wrongfully used and/or disclosed KML's confidential and proprietary information and/or trade secrets to Reliant, a competitor of KML, for Reliant's benefit to the detriment of KML.

109. Upon information and belief, Reliant acquired and used information belonging to KML, including, information known to be, or information that they should have known constituted, KML's confidential and proprietary information and/or trade secrets.

110. Reliant used improper means to obtain KML's confidential and proprietary information and/or trade secrets in violation of the NJUTSA.

111. Alternatively, at the time of the disclosure of the information to Reliant, upon information and belief, Reliant knew or should have known that the knowledge of the information was derived or acquired through improper means.

112. Alternatively, Reliant knew or should have known that the knowledge of the information was derived through a person who owed a duty to KML to maintain the secrecy of the information or limit the use of the information.

113. By virtue of the aforementioned conduct, Semiraglio, Berenato, Burmylo, and Reliant have wrongfully misappropriated KML's confidential and proprietary information and/or trade secrets.

114. As a direct and proximate cause of defendants' wrongful misappropriation, KML has been damaged and continues to be injured in its business and property.

WHEREFORE, KML prays for judgment against Semiraglio, Berenato, Burmylo, and Reliant enjoining use of KML's trade secrets and confidential, proprietary information, requiring all reasonable affirmative steps be taken to protect this information, awarding compensatory damages, disgorgement, a reasonable royalty for use of this information, statutory double-damages, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## SEVENTH COUNT
(Tortious Interference)
(as against Reliant)

115. KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

116. KML has a protected contractual interest and/or a reasonable expectation of economic advantage relative to its employees subject to restrictive covenants.

117. Reliant has interfered with and continue to interfere with KML's contractual advantage and/or reasonable expectation of prospective economic advantage with its employees.

118. Semiraglio, Berenato, and Burmylo's employment at Reliant, and Reliant's hiring of Semiraglio, Berenato, and Burmylo, despite knowledge of their obligations, is wrongful, unjustified, intentional and malicious.

119. As a direct and proximate result of the wrongful, unjustified, intentional, and malicious interference by Reliant with KML's contractual rights and/or reasonable expectation of prospective economic advantage with its employees, KML has been damaged and continues to be injured in its business and property

WHEREFORE, KML prays for judgment against Reliant awarding compensatory damages, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and

21

such other and further relief as the Court may deem just and proper.

## EIGHTH COUNT
(Unfair Competition)
(as against Reliant)

120.   KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

121.   The aforementioned conduct of defendants constitutes acts of unfair competition.

122.   As a direct and proximate result of defendants' unfair competition, KML has been damaged and continues to be injured in its business and property.

WHEREFORE, KML prays for judgment against Reliant awarding compensatory damages, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## NINTH COUNT
(Aiding and Abetting Breach of Restrictive Covenants, Nondisclosure
Obligations, and Fiduciary Breaches)
(as against Reliant)

123.   KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

124.   By virtue of the aforementioned conduct, Reliant knowingly assisted and facilitated in the breach, and continued breach, of Semiraglio, Berenato, and Burmylo's contractual and fiduciary obligations owed to KML.

125.   Upon information and belief, Reliant wrongfully solicited and obtained information belonging to KML including, information known to be, or information that they should have known to be, KML's trade secrets and confidential and proprietary information.

126. As a direct and proximate cause of Reliant's assistance, KML has been damaged and continues to be injured, including but not limited to irreparable injury to its business and property.

WHEREFORE, KML prays for judgment against Reliant awarding compensatory damages, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## TENTH COUNT
### (Civil Conspiracy)
### (as against Semiraglio, Berenato, Burmylo, and Reliant)

127. KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

128. Semiraglio, Berenato, Burmylo, and Reliant have been, and are, engaged in a concerted action to (i) wrongfully compete with KML and breach their contractual and fiduciary obligations to KML, (ii) interfere with KML's business relationships and prospective economic advantage, and (iii) wrongfully receive and/or disseminate and/or use KML's trade secrets and confidential and proprietary information.

129. This concerted action is done to accomplish an unlawful purpose as stated above.

130. As a direct and proximate cause of these actions, KML has been damaged and continues to be injured including but not limited to irreparable injury to its business and property.

WHEREFORE, KML prays for judgment against Semiraglio, Berenato, Burmylo, and Reliant awarding compensatory damages, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

23

**ELEVENTH COUNT**
(Breach of Asset Purchase Agreement)
(as against MT, Semiraglio and Berenato)

131.    KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

132.    The Asset Purchase Agreement is a valid and binding contract.

133.    KML has performed all its obligations under the Asset Purchase Agreement.

134.    The above-described conduct constitutes a material breach of the Asset Purchase Agreement by MT, Semiraglio and Berenato.

135.    As a direct and proximate cause of these breaches, KML has been damaged and continues to be injured including but not limited to irreparable injury to its business and property.

WHEREFORE, KML prays for judgment against MT, Semiraglio and Berenato, rescinding the Asset Purchase Agreement, awarding compensatory damages, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

**TWELVTH COUNT**
(Breach of the Implied Covenant of Good Faith and Fair Dealing)
(as against MT, Semiraglio and Berenato)

136.    KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

137.    In every contract, there exists an implied covenant of good faith and fair dealing.

138.    MT, Semiraglio and Berenato are bound by the covenant of good faith and fair dealing implied by law in the Asset Purchase Agreement.

24

139. By virtue of his aforementioned conduct, MT, Semiraglio and Berenato have threatened to breach, have breached, and continue to breach the covenant of good faith and fair dealing implied in the Asset Purchase Agreement.

140. As a direct and proximate result of these breaches, KML has been damaged and continues to be irreparably harmed in its business and property.

WHEREFORE, KML prays for judgment against MT, Semiraglio and Berenato, rescinding the Asset Purchase Agreement, awarding compensatory damages, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## THIRTEENTH COUNT
### (Fraud)
### (as against MT, Semiraglio and Berenato)

141. KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

142. At the time KML entered into the Asset Purchase Agreement, MT—through its principals, Semiraglio and Berenato—intentionally concealed material facts from KML, and made intentional misrepresentations to KML.

143. The material omissions and misrepresentations were known by MT—through its principals, Semiraglio and Berenato—to be materially misleading at the time Midlantic Title, LLC made them.

144. The material omissions and misrepresentations were made by MT—through its principals, Semiraglio and Berenato—with the intent that KML rely on them in entering into the Asset Purchase Agreement.

25

145. At all relevant times, MT, Semiraglio and Berenato knew that KML would rely on their material omissions and misrepresentations.

146. KML did, in fact, rely on those material omissions and misrepresentations to its detriment, and, therefore, it was damaged.

WHEREFORE, KML prays for judgment against MT, Semiraglio and Berenato, rescinding the Asset Purchase Agreement, awarding compensatory damages, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## FOURTEENTH COUNT
### (Equitable Fraud)
### (as against MT, Semiraglio and Berenato)

147. KML incorporates herein by reference the allegations set forth in the above paragraphs as if fully set forth herein.

148. At the time KML entered into the Asset Purchase Agreement, it was unaware of the material facts that MT, Semiraglio and Berenato had concealed from it, and, moreover, was unaware of the affirmative misrepresentations MT, Semiraglio and Berenato had made.

149. MT, Semiraglio and Berenato use their superior and unfair bargaining positions vis-à-vis KML to unfairly induce it to enter into the Asset Purchase Agreement.

WHEREFORE, KML prays for judgment against MT, Semiraglio and Berenato, rescinding the Asset Purchase Agreement, awarding compensatory damages, punitive damages, fees, and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by a jury on all issues so triable.

**NORRIS, McLAUGHLIN & MARCUS, PA**
*Attorneys for Plaintiff*

By: s/ *Robert Mahoney*
Robert Mahoney
400 Crossing Blvd.
Bridgewater, NJ 08807
rmahoney@nmmlaw.com
908-722-0700

Dated: August 31, 2017

27

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned hereby certifies that with respect to the matter in controversy herein neither Defendants nor its attorneys are aware of any other action pending in any court, or of any pending arbitration or administrative proceeding, to which this matter is subject.

**NORRIS, McLAUGHLIN & MARCUS, PA**
*Attorneys for Plaintiff*

By: s/ *Robert Mahoney*
   Robert Mahoney
   400 Crossing Blvd.
   Bridgewater, NJ 08807
   rmahoney@nmmlaw.com
   908-722-0700

Dated: August 31, 2017